ANNA P. PEREIRA
CORPORATION COUNSEL
920 Broad Street, Room 316
Newark, New Jersey 07102
Attorney for Defendants City of Newark (Improperly pled as "City of
Newark Police Dept.", Former Police Chief Campos, Officer Smith,
Officer Alvarado, Officer Nieves and Sgt. Venancio

By:  Avion M. Benjamin (AB-5629)
     Assistant Corporation Counsel
     (973) 733-3880

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **MARK STEVENS,** | : | CIVIL ACTION NO. 09-1279 (PGS) |
| Plaintiff, | : | |
| v. | : | |
| CITY OF NEWARK POLICE DEPARTMENT, and in both their individual and professional capacity POLICE OFFICER SILAS SMITH, JR., POLICE OFFICER CARLOS ALVARADO, POLICE OFFICER ANTHONY VENANCIO, POLICE OFFICER NEIVES, POLICE CHIEF ANTHONY CAMPOS, ABC CORPS 1-20 (said names being fictitious), JOHN DOES 1-20 (said names being fictitious) | : | |
| Defendants. | : | |

---

**BRIEF IN SUPPORT OF THE DEFENDANTS' NOTICE OF MOTION FOR SUMMARY
JUDGMENT**

---

ANNA P. PEREIRA
Corporation Counsel
Attorneys for Defendants

AVION M. BENJAMIN, ESQ.
On the Brief

## STATEMENT OF MATERIAL FACTS (L.Civ.R. 56.1)

1.   This matter arises from an incident that occurred on March 24, 2007. Plaintiff filed a complaint on March 20, 2009 alleging both state and federal claims against the Defendants. See copy of Plaintiff's Complaint annexed to the Declaration of Avion M. Benjamin as Exhibit A.

2.   Specifically, plaintiff alleges: negligence; that his constitutional rights were violated; he was falsely arrested/imprisoned, maliciously prosecuted, assaulted, and suffered emotional distress. Id.

3.   Plaintiff was arrested for possession of a Controlled Dangerous Substance and resisting arrest. Id.

4.   Plaintiff denies being in possession of any illegal narcotics. Id.

5.   The Complaint contains state law tort claims for false arrest/imprisonment, malicious prosecution, intentional infliction of emotional distress, assault and negligence. Id.

6.   The claims against Defendant Smith are that he physically assaulted and battered the plaintiff; and falsely arrested plaintiff. Id.

7.   The claims against Defendant Alvarado, Venancio and Nieves

2

are that they conspired with one another to deprive the plaintiff of his constitutional rights. Id.

8. The claims against Former Police Chief Campos is that he fostered a policy and culture within the police department that lead to the misconduct by the other Defendant officers; and he also conspired with the other defendants to deprive plaintiff of his constitutional rights. Id.

9. Plaintiff also claims that Defendant Campos failed to supervise the Defendant officers. Id.

10. On March 24, 2007, plaintiff was sitting in the passenger seat of his brother's vehicle which was parked in front of a fire hydrant. See Plaintiff's Deposition Transcript, T16:2-T16:18 annexed to the Declaration of Avion M. Benjamin as Exhibit B.

11. Two police officers approached the vehicle. Id. at T26:9-T26:15.

12. Officer Alvarado approached the driver's side of the vehicle and Officer Smith approached the passenger side. See Silas Smith Deposition Transcript annexed to the Declaration of Avion M. Benjamin as Exhibit C at T19:7-T19:18.

13. Officer Smith and the plaintiff had physical contact where the top of plaintiff's head made contact with Officer Smith's chin/chest area. Id. at T29:1-T29:25.

3

14.  During plaintiff's arrest, Officer Smith pushed plaintiff on the ground and grabbed his arm to handcuff him.  Id. at T30:1-T30:6.

15.  Officer Smith prepared a use of force form for the arrest of plaintiff. Id. at T56:14-T56:23.

16.  Plaintiff claims he torn his meniscus as a result of his encounter with Officer Smith.  See Exhibit B at T74:21-T75:5.

17.  Plaintiff treated with Dr. Thomas F. Cuomo for his torn meniscus. Id. at T76:1-T76:11.

18.  Dr. Cuomo issued a narrative report on August 25, 2010 where he opined that plaintiff sustained a tear to his medial meniscus of his right secondary to an altercation. See Dr. Cuomo's report annexed to the Declaration of Avion M. Benjamin as Exhibit D.

19.  Dr. Cuomo indicated that plaintiff could return to work on September 1, 2009 without restrictions. Id.

20.  Plaintiff is a bus operator employed with New Jersey Transit and at the time of the incident had the same job. See Exhibit B at T9:22-T10:10.

21.  Plaintiff's liability expert, Joseph J. Stine, rendered an opinion regarding the arrest of plaintiff. See Plaintiff's Expert Report annexed to the Declaration of Avion M. Benjamin as Exhibit E.

4

22.   Plaintiff's expert's report focuses primarily on Officer Smith's conduct.   There is one opinion where all four officers are mentioned.   The report offers no opinions on the City of Newark's liability. <u>Id.</u>

## LEGAL ARGUMENT

### POINT I

**ALL PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED AS PLAINTIFF HAS FAILED TO SATISFY THE THRESHOLD REQUIREMENT OF N.J.S.A. 59:9-2(d)**

The New Jersey Tort Claims Act (hereinafter "the Act"), N.J.S.A. 59:1-1, et seq., bars the state law tort claims brought by plaintiff. Specifically, N.J.S.A. 59:9-2(d) provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided however, that this limitation on the recovery for damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.

In order to survive Title 59 scrutiny, a plaintiff must establish two elements. First, the plaintiff must demonstrate that he or she has suffered an injury severe enough to equate a permanent loss of a bodily function, a permanent disfigurement, or dismemberment. Collins v. Union County Jail, 150 N.J. 407, 413 (1997); Brooks v. Odom, 150 N.J. 395 (1997). Second, the plaintiff must also prove that this loss of a bodily function was "substantial". Brooks, 150 N.J. at (406).

The threshold issue of whether an injury is permanent is to be

6

determined by the judge and not the jury. See, Oswin v. Shaw, 250 N.J. Super. 461 (App. Div. 1991).  To establish a permanent injury under N.J.S.A. 59:9-2(d), a plaintiff must put forward competent medical evidence of an objective, discernible injury. Brooks, 150 N.J. at 404.   Such an objective injury is one that can be demonstrated by evidence other than plaintiff's complaints or physical discomfort and distress. See Thorpe v. Cohen, 258 N.J.Super. 523 (App. Div. 1992).  "Temporary injuries, no matter how painful and debilitating, are not recoverable." Brooks, 150 N.J. at 403.

In the within matter, plaintiff has not provided any proof that he incurred medical treatment expenses in excess of $3,600. Furthermore, plaintiff has not established subjective and/or objective medical evidence that he has sustained a permanent injury of bodily harm as a result of the incident.  Plaintiff's only complaint relates to his knee.  Plaintiff claims as a result of this incident, he torn his right meniscus and had microscopic surgery.  See Exhibit B at T74:21-T76:19.  Plaintiff treated with Dr. Cuomo after the surgery. Id. at T77:1-T77:6.  Plaintiff is not presently treating with Dr. Cuomo. Id at T77:2-T78:9.

Dr. Cuomo rendered a narrative report on August 25, 2010.  See Exhibit D.  Dr. Cuomo opined that plaintiff sustained a tear to his medial meniscus of his right knee. Id.  Dr. Cuomo released plaintiff to return to work on September 1, 2009 without

restrictions. Id.  Dr. Cuomo's report does not provide objective medical evidence that plaintiff sustained a permanent loss of a bodily function as a result of his encounter with Officer Smith. Plaintiff's state law tort claims for false arrest/imprisonment, malicious prosecution, assault, intentional infliction of emotional distress, and negligence warrant summary judgment in favor of the Defendants since it is obvious he does not satisfy the threshold requirement of N.J.S.A. 59:9-2(d).

Even if the Court finds that plaintiff has satisfied the threshold of N.J.S.A. 59:9-2(d), plaintiff's claim for intentional infliction of emotional distress still fails.  Plaintiff fails to meet all the requirements of this claim. To establish a claim for intentional infliction of emotional distress, a plaintiff must show that: 1) the defendant acted intentionally or recklessly, both in doing the act and producing emotional distress; 2) the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; 3) the defendant's actions were the proximate cause of the emotional distress; and 4) the distress suffered was so severe that no reasonable person could be expected to endure it. Id. quoting Buckley v. Trenton Sav. Fund Soc'y. 111 N.J. 355, 366, 544 A. 2d 857 (1988).

Severe emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals. Taylor v. Metzger, 152 N.J. 490, 515, 706

8

A. 2d 685 (1998). The emotional distress must be sufficiently substantial to result in either physical illness or serious psychological sequelae. Aly v. Garcia, 333 N.J. Super. 195, 204, 754 A.2d 1232 (App. Div. 2000), certif. denied, 167 N.J. 87, 769 A.2d 1050 (2001). The standard is an objective one. The defendant's conduct must be "sufficiently severe to 'cause genuine and substantial emotional distress or mental harm to average persons'" Taylor, supra, 152 N.J. at 516, 706 A.2d 685 (quoting Decker v. Princeton Packet, Inc., 116 N.J. 418, 430, 561 A.2d 1122(1989)). Mere allegations of "aggravation, embarrassment, and unspecified number of headaches, and loss of sleep," are insufficient as a matter of law to support a finding of severe mental distress that no reasonable person could be expected to endure. Turner at 200 (quoting Buckley, supra, 111 N.J. at 368, 544 A.2d 857.) In Aly v. Garcia, 333 N.J. Super. 195, 204,-205, 754 A.2d 1232, the court held that it is not enough for the plaintiff to allege that he or she was "acutely upset" by the incident in question, especially where no medical assistance or counseling is sought.

In Lascurain v. City of Newark, 349 N.J. Super. 251, 280, 793 A.2d 731, the plaintiff did not establish severe emotional distress where she claimed that she became nauseous and upset, was depressed, had nightmares, and no longer enjoyed her daily activities. The court found that although the plaintiff's personal physician corroborated her depression, there had been no dramatic

9

impact on her everyday activities or her ability to function and she had not sought regular psychiatric counseling. Turner at 201. In affirming the dismissal of the intentional tort claim, the Appellate Division concluded that plaintiff's proofs of humiliation and indignity, without corroborating medical proof or evidence of physical or psychological symptoms, were not enough to sustain a cause of action for the intentional tort.

In the present case, there is no evidence to support this claim. Plaintiff has not treated with any doctors for this alleged emotional distress. Since plaintiff has failed to satisfy the requirements of intentional infliction of emotional distress, summary judgment should be granted with respect to this claim.

Furthermore, with respect to plaintiff's tort claim for malicious prosecution, this claim fails against the Defendant City of Newark as a public entity is not capable of malice, which is one of the elements for this claim. In order to sustain an action for malicious prosecution, malice and want of probable cause must concur. See McIntosh v. City and County of Denver, 98 Colo. 403 (Supreme Court 1936). In McIntosh, the Supreme Court of Denver explained that malicious prosecution is a wanton prosecution with a deliberate intent to injure the party prosecuted. Id. at 405. The Court further explained that it is an intentional wrongful prosecution without just cause or excuse. The Supreme Court held that a city is a corporate entity, an artificial being, and as such

10

could entertain no malicious intent. Id. at 406.

The Appellate Division in O'Connor v. Harms, 111 N.J. Super. 22 (App. Div. 1970), cited to McIntosh v. City and County of Denver, in holding that the Board of Education could not be liable to plaintiff for his claim of malicious interference with a contractual relationship.  The Appellate Division held that where "malice" is an essential ingredient of the tort, a city or comparable public agency is not vicariously liable for the personal malice of the city's officers or employees in performing their public duties.   Id. at 27.   The facts which give rise to plaintiff's claim malicious prosecution claim warrants application of the above mentioned case law.  The City of Newark can not express a malicious intent and as such, can not be liable to plaintiff for the actions of its officers/employees with respect to his claim for malicious prosecution.  Furthermore, this claim is only viable against Officer Smith since he arrested the plaintiff. Summary judgment should be granted on this claim as well to all Defendants except Officer Smith.

POINT II

THE FEDERAL CIVIL RIGHTS CLAIMS AGAINST THE CITY OF NEWARK MUST BE DISMISSED AS IT IS CLEAR THAT A MUNICIPALITY MAY NOT BE HELD LIABLE UNDER 42 U.S.C. § 1983 ON A THEORY OF RESPONDEAT SUPERIOR; PLAINTIFF MUST ESTABLISH THAT A POLICY OR CUSTOM OF THE CITY OF NEWARK CAUSED THE CONSTITUTIONAL DEPRIVATION

If plaintiff proves that Officer Smith used excessive force against him, falsely arrested/imprisoned him, and maliciously prosecuted him, all in violation of his federal constitutional rights, the City of Newark has no liability in this matter as plaintiff has failed to establish that the City of Newark has a policy or custom, which caused his alleged constitutional deprivation. As such, all federal claims against the City of Newark fail.

It is well settled that "a municipality may be held liable in a § 1983 action only in limited circumstances." Monell v. Dep't of Social Serv., 436 U.S. 658, 688-689 (1978). In accordance with this rule, "a local government may not be held liable for constitutional violations solely upon the basis of *respondeat superior*, municipal liability only arises when a constitutional deprivation results from an official custom or policy." Montgomery

12

v. De Simone, 159 F.3d 120 (3d. Cir. 1998) *citing* Monell.

Consequently, no liability on the part of a municipality can be found merely on the basis of the employment relationship. Hopp v. City of Pittsburgh, 194 F.3d 434 (3d. Cir. 1999).

Municipal liability under Section 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). The Court's reasoning in Monell has created a two-path track to municipal liability under § 1983, depending on whether the Beck v. City of Pittsburgh, 89 F.3d 966 (3d. Cir. 1996) allegation is based on municipal policy or custom.".

Accordingly, to sustain a Section 1983 claim against the City of Newark, "plaintiff must prove the existence of a policy or custom that has resulted in a constitutional violation…" Groman v. Twp. of Manalapan, 47 F.3d 628 (D.N.J. 1995).

Additionally, plaintiff must "attribute [the policy or custom] to the city itself, and show a causal link between the execution of the policy, [practice or custom] and the injury suffered." Fullam v. Philadelphia Int'l Airport, 49 F. Supp. 2d 434, 445 (E.D.Pa. 1999) *quoting* Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3rd Cir. 1984). In other words, "plaintiff must demonstrate that the policy or custom was the moving force behind the unconstitutional act." Combs v. School Dist. of Phil. 2000 WL 1611061 (Oct 26, 200,

E.D. Pa.).

Plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3rd Cir. 1990). In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id. at 851, citation omitted.

Here, there is no evidence to establish that a custom or policy of the City of Newark resulted in the plaintiff's constitutional rights being violated. Plaintiff's liability expert, Joseph J. Stine, rendered a report as to the validity of plaintiff's arrest; and the conduct of the individual defendant officers. See Exhibit E.

Mr. Stine gave the following opinions in his report: (1) that Officer Smith was not in accord with generally accepted practices and procedures for professional police officers when he improperly secured the suspected crack cocaine after the arrest of Tyrone Davis; (2) that Officer Smith's testimony in this case is not in conformity with generally accepted practices and procedures for professional police officers; (3) that Officer Smith did not have probable cause to place the plaintiff under arrest; (4) that the force used by Officer Smith was excessive and not in accord with generally accepted practices and procedures for professional police

14

officers; (5) that Officer Smith's actions toward plaintiff were based on pre-conceived conclusions, stereotyping and profiling; (6) that the defendant officers' actions were not in accord with generally accepted practices and procedures for professional police officers when they arrested plaintiff; and (7) that the disdain and total lack of respect the officers had for the constitutionally guaranteed rights of any person who happened to be on the streets or sidewalks was contrary to generally accepted practices and procedures for professional police officers. Id.

Plaintiff's expert's report does not offer any opinions with respect to the City's liability. Plaintiff's expert report does not address whether the "generally accepted practices and procedures for professional police officers" are different from the practices and procedures within the City of Newark police department. Plaintiff's expert does not opine that the City failed to properly train these officers. Plaintiff's expert does not opine that based on the documents/materials that he found that there was a custom, pattern, policy within the City that led to plaintiff's constitutional rights being violated. The Defendants submit that plaintiff's expert report is nothing more than a net opinion that should not even be considered by the Court. However, even with the report, it is respectfully submitted that plaintiff has failed to meet his burden of proof with respect to his 42 U.S.C. § 1983 claim against the City of Newark and summary judgment is appropriate as a

matter of law on this issue.

## POINT III

**PLAINTIFF HAS NOT ESTABLISHED LIABILITY AGAINST DEFENDANT CITY OF NEWARK, UNDER 42 U.S.C. § 1983, BASED ON ALLEGED DEFICIENCIES IN HIRING, TRAINING AND SUPERVISION**

There is a failure to train claim pled in plaintiff's complaint against former Police Chief Campos.  It does not appear that the plaintiff pled such a claim against the City. However, if the Court were to find such claim exists in the complaint, plaintiff has not established that deficiencies exist in the City of Newark's training and/or supervision of its police officers.

The Supreme Court has made it clear that a municipality may be held liable for constitutional violations arising from its failure to train employees.  Canton v. Harris, 489 U.S. 378 (1988).  In Canton, the Supreme Court held that the first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

Further, the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  Id. at 388.  Also, for liability to

16

attach, the identified deficiency in a city's training program must be closely related to the ultimate injury. Id. at 390.

Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by prior cases — can a city be liable for such failure under Section 1983. Id. at 389.

The Supreme Court reiterated the difficulty of this standard, noting in the context of an inadequate background screening case that a § 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (emphasis in original). When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee. Id.

In the present matter, plaintiff has presented no evidence to show that the individual named defendant officers' actions resulted from the City of Newark's "deliberately indifferent failure to train its officers." Plaintiff's expert does not opine that the defendant officers were not trained in certain areas but rather opined that their conduct was not in accord with generally accepted

17

practices and procedures for professional police officers. Plaintiff's expert offers no further explanation on the generally accepted practices and procedures.

Plaintiff has not established that the City of Newark failed to properly train these officers. Reitz v. City of Bucks, 125 F.3d 139, 144 (3rd Cir. 1997). Accordingly, summary judgment should be granted in favor of the City.

POINT IV

**PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY AGAINST THE DEFENDANT OFFICERS SHOULD BE DISMISSED AS PLAINTIFF HAS FAILED TO ESTABLISHED A CIVIL CONSPIRACY EXISTED**

In general, Section 1985(1) proscribes conspiracies that interfere with the performance of official duties by federal officers, Section 1985(2) proscribes those that interfere with the administration of justice in federal and state courts, and Section 1985 (3) proscribes those that interfere with the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws," as well as the right to support candidates in federal elections.  See 42 U.S.C. §§1985(1) – (3). In Count One of plaintiff's complaint, he alleges that the Defendant Officers conspired with one another to deprive his constitutional rights.

Section 1985 (3) creates a cause of action against any two persons who "conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…"  The Supreme Court has noted that the "equal protection" language in Section 1985 requires that claims brought under this section be supported by allegations that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidious discriminatory animus."  See Griffin v. Breckenridge, 403

19

U.S. 88, 102, 91 S. Ct. 1790, 29 L.Ed. 2d 338 (1971).  Thus, to establish a Section 1985(3) violation, a plaintiff must prove the following five elements: (1) a conspiracy; (2) motivated by racial or perhaps otherwise class-based invidious discrimination; (3) for the purpose of depriving either directly or indirectly, any person or class of persons equal protection of the laws, or equal privileges and immunities under the laws; (4) an act in furtherance of the conspiracy; and (5) that the plaintiff was injured in his person or property or was deprived of having and exercising any right or privilege of a citizen of the United States.  Griffin, 403 U.S. at 102-03.

The conspiracy element of § 1985(3) requires "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon,' and 'an overt act that results in that damage. Russo v. Voorhees Township, 403 F. Supp. 2d 352, (2005).

In Russo, plaintiff alleged that defendant detective unlawfully obtained a warrant and subsequently arrested him violating numerous constitutional rights under 42 U.S.C. §§1983, 1985(3) and 1986.  The Defendants argued that Russo failed to allege both a conspiracy and any racial or otherwise class based, invidiously discriminatory animus.  Russo argued that there was a conspiracy and that he is a member of a class – the impoverished.

20

Id. at 359.   In support of his conspiracy claim, Russo argued that it was clear the detective did not act on his own and was acting with other officers to deprive Russo of his civil rights.

The Court found that Russo failed to allege that there was ever an agreement between the detective and other officers to deprive him of his civil rights.   The Court explained that an agreement is a necessary component of a conspiracy.  Graves v. U.S. 961 F.Supp. 314, 320 (D.D.C. 1997). Accordingly, the Court found that there was no genuine issue of material fact as to whether a conspiracy existed and granted the defendants' summary judgment motion.

In this case, there has been no evidence presented that these officers entered into an agreement to deprive plaintiff of his constitutional rights.   Former Police Chief Campos was not at the scene of the incident. The only interaction plaintiff had with any of the officers at the scene was with Officer Smith. Plaintiff's allegations are mainly against Officer Smith.   Plaintiff testified that Officer Smith assaulted him.   Plaintiff testified that Officer Smith falsely arrested him. The plaintiff has not satisfied all five elements to succeed on his §1985(3) claim.   As such, summary judgment should be granted in favor of these defendants with respect to plaintiff's civil conspiracy claim.

POINT V

**ALL CLAIMS AGAINST FORMER POLICE CHIEF CAMPOS SHOULD BE DISMISSED AS PLAINTIFF CANNOT PROVE A CAUSE OF ACTION BASED ON INADEQUATE TRAINING OR SUPERVISION AGAINST THESE DEFENDANTS.**

Plaintiff alleges that former Police Chief Campos failed to supervise the defendant officers thereby creating a culture which permitted and fostered the type of alleged misconduct that occurred. However, there have been no facts presented to support this claim.

The New Jersey Supreme Court has adopted the standard of "recklessness or deliberate indifference." Schneider v. Simonini, 163 N.J. 336 (2000). Under this standard, a plaintiff must establish that: (1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; (3) the failure to supervise amounts to deliberate indifference or recklessness. Schneider, supra, 163 N.J. at 373, citing Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986).

The knowledge element of a plaintiff's case requires proof that the supervisor was aware of facts from which an inference could be drawn that the subordinate was acting in an unconstitutional manner that carried a substantial risk of causing serious harm. Schneider, supra, 163 N.J. at 373-374, citing Canton

22

v. Harris, 489 U.S. 378, 389 (1989) (holding that municipality can
be liable for failure to train employees when its failure shows "a
deliberate indifference to the rights of its inhabitants.")   In
reality, the knowledge requirement is a "should have known" test.
Schneider, supra, 163 N.J. at 374.

A court should consider five non-exclusive factors when
deciding, under the "recklessness or deliberate indifference"
standard, whether to impose supervisory liability:

> (1) whether there were any prior incidents similar to the
> constitutional violation alleged by the plaintiff; (2) how
> adequate the supervisor's response was to those prior
> incidents; (3) how the supervisor responded to the violation
> alleged by this particular plaintiff; (4) to what extent the
> supervisor can be said to have been a causal factor in
> contributing to the constitutional violation; and (5) to what
> extent the supervisor was aware of the constitutional
> misconduct.

Schneider, supra, 163 N.J. at 373-374, citing The Buck Does Not
Stop Here: Supervisory Liability in Section 1983 Cases, 1997 U.
Ill. L.Rev. 147, 169-184 (1997).

The Court in Schneider then applied the above cited factors to
the facts before it and held:

> We must now apply the "recklessness or deliberate
> indifference" standard to the present case.  Ordinarily, the
> factfinder in a case should decide whether that required level
> of negligence has been established.  That issue, however, may
> be removed from a jury as the factfinder in highly
> extraordinary cases in which reasonable minds could not
> differ.  Fluehr v. City of Cape May, 159 N.J. 532, 732 A.2d
> 1035 (1999).  Viewing the evidence in this case in light of
> the principles set forth in Brill, we conclude, as a matter of
> law, that no supervisory liability should be imposed against
> Buccino as the supervisor of Simonini.  There was no evidence
> that Buccino was aware of a risk that Simonini was obtaining
> an unconstitutional arrest warrant for plaintiff.  Nor was

there evidence that Buccino acted recklessly or with deliberate indifference about whether Simonini had probable cause to arrest plaintiff. Stated another way, there was no evidence probative of the five relevant factors previously enumerated. Based on the lack of evidence, we conclude, as a matter of law, that Buccino did not subject plaintiff to a deprivation of constitutional rights, or cause plaintiff to be so subjected, thereby failing to satisfy the "affirmative link" required by Monell.

Schneider, supra, 163 N.J. at 375.

Similarly, in the present case, there is no evidence to support this claims against former Police Chief Campos. There has been no evidence presented that former Police Chief Campos was aware of a risk of a constitutional violation and that he acted recklessly or with deliberate indifference.

Furthermore, Campos did not personally participate in the arrest and detention of plaintiff. In Anela v. City of Wildwood, 595 F.Supp. 511 (D.N.J. 1984), plaintiffs were arrested for the violation of a noise ordinance. They sued, among others, the Chief of Police of the City of Wildwood for claims of false arrest and false imprisonment. The Court held that because he did not personally imprison plaintiff or commit any other act (defined as a "movement of the musculature"), the police chief was immune.

Also, in Gurski v. State Police Department, 242 N.J. Super. 148 (App. Div. 1990), the Court found that a superintendent of police was immune from suit in a case arising out of the allegedly unreasonable and abusive behavior of an officer executing a warrant where the superintendent did not participate in nor ratify the

24

conduct. Id. at 162-63.

In the case at bar, plaintiff has not provided a scintilla of evidence to establish the requirements for either a negligent training or supervisor liability claim.  While it is clear that these causes of action are recognized, it is equally clear that such claims must be proven and that the burden of proof falls on the plaintiff.

As plaintiff has failed to establish any cause of action against Defendant Campos, summary judgment should be granted in his favor.

POINT VI

**PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SMITH, ALVARADO, NIEVES AND VENANCIO SHOULD BE DISMISSED AS THESE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The doctrine of qualified immunity provides that governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed.2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); see also Michaels v. State of New Jersey, 222 F.3d 118, 120 (3d Cir. 2000), cert. denied, 531 U.S. 1118, 121 S.Ct. 833, 148 L.Ed.2d 780 (2001).

The issue of qualified immunity rose by a public officer in defense to a § 1983 claim should be considered whenever possible for disposition as a matter of law, especially in the context of an alleged unlawful arrest or unlawful search and seizure. Harlow, supra, 457 U.S. at 815-816, 102 S.Ct. at 2736-37, 73 L.Ed.2d 396.

The crux of the defense is whether a reasonable officer could have believed his or her actions were lawful in light of clearly established law and the information the officer possessed.

In this respect, law enforcement officers are given ample room

26

for mistaken judgments.  Malley v. Briggs, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).  The purpose of qualified immunity is to protect all but the plainly incompetent or those who knowingly violate the law.  Id., 475 U.S. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d 271.  See also Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662 (1986) (the official must intentionally, or with reckless disregard, violate a clearly established right before a § 1983 claim is justified).  The United States Supreme Court has explained:

> We have frequently observed, and our many cases on point amply demonstrate, the difficulty of determining whether particular searches or seizures comport with the Fourth Amendment.  Law Enforcement officers whose judgments in making these difficult determinations are objectively reasonable should no more be held personally liable in damages than should officials making analogous determinations in other areas of the law. [Anderson, 483 U.S. at 644, 107 S.Ct. at 3041, 97 L.Ed.2d 523.]

Determining whether a police officer is entitled to qualified immunity requires a two-part inquiry: (1) was the law governing the police officer's conduct clearly established; (2) under that law could a reasonable police officer believe that his conduct was lawful?  Schneider v. Simonini, 163 N.J. 336, 355 (2000), cert. denied, 531 U.S. 1146, 121 S.Ct. 1083, 148 L.Ed. 2d 959 (2001) (citing Liston v. County of Riverside, 120 F.3d 965, 975 (9th Cir. 1997)).  If officers of reasonable competence could disagree on the issue, the doctrine of qualified immunity should be applied.  See Connor v. Powell, 162 N.J. 397, 409, cert. denied, 530 U.S. 1216,

120 S.Ct. 2220, 147 L.Ed.2d 251 (2000).

With respect to the issue of whether the law was clearly established, the United States Supreme Court has stated:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent [to the official]. [Anderson, 483 U.S. at 640, 107 S. Ct. at 3039, 97 L.Ed.2d 523.]

The basic purpose of qualified immunity is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment.  Gooden v. Howard Cty., 954 F.2d 960, 965 (4th Cir. 1992).  In other words, police officers should not be hindered by threat of civil liability from attempting to perform their duties to the best of their ability, as long as they are not violating clearly defined, firmly established constitutional rights.  District of Columbia v. Evans, 644 A.2d 1008, 1016 (D.C. 1994).

The United States Supreme Court has explained:

> [P]ermitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damage liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated....

28

> The general rule of qualified immunity is intended to provide government officials with the ability reasonably [to] anticipate when their conduct may give rise to liability for damages.  Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law. [Anderson, 483 U.S. at 638, 646, 107 S.Ct. at 3038, 3042, 97 L.Ed. 2d 523.]

The New Jersey Supreme Court has recognized that the United States Supreme Court has interpreted § 1983 in such a manner as to limit the rights of plaintiffs and to encourage the disposition of actions as a matter of law.  Wildoner v. Borough of Ramsey, 162 N.J. 375, 386-87 (2000); see also Kirk v. Newark, 109 N.J. 173, 181 (1988) (the United States Supreme Court has formulated the test for qualified immunity in such a fashion as to avoid excessive disruption of government and to permit the resolution of many insubstantial claims on summary judgment); accord Capone v. Marinelli, 868 F.2d 102, 105 (3d Cir. 1989).

For this reason, a defendant's entitlement to qualified immunity is a question of law to be decided by the court as early in the proceeding as possible, preferable on a properly supported motion for summary judgment.  Wildoner, supra, 162 N.J. at 386-87. Accord Schneider, 163 N.J. at 355-57, 356-61 (the traditional Brill summary judgment standard is modified to accommodate the special needs of § 1983 cases in order to comport with federal law; under that law, the issue of qualified immunity is a legal issue to be determined by the trial judge, not the jury; that is to say, the

ultimate issue of the objective reasonableness of the officer's actions should be determined by the court as a question of law; we reaffirm our belief that the summary judgment standard should be used for this purpose).

Based on the above-mentioned case law, Defendants Smith, Alvarado, Nieves and Venancio are entitled to qualified immunity. These officers conducted a motor vehicle stop because they observed the vehicle plaintiff was in, parked in front of a fire hydrant. They also observed that the vehicle's windows were tinted. All four officers approached the vehicle with Alvarado and Venancio going to the driver's side and Smith and Nieves going to the passenger side. At the passenger side, through a crack in the window, Officer Smith observed the plaintiff throw something to the floor of the vehicle. Officer Smith asked the plaintiff to open the door and step out of the vehicle.  According to Officer Smith, the plaintiff lunged at him when he exited the vehicle, making contact with his chin/chest area.   The two fell to ground and Officer Smith used what he believed to be reasonable force in order to handcuff the plaintiff. Once the plaintiff was handcuffed, Officer Smith retrieved from the passenger side floor of the vehicle a vial that contained a white powdery substance.  Plaintiff was arrested, charged with possession of a controlled dangerous substance and resisting arrest, and transported to be processed.

Officer Smith effectuated the arrest of plaintiff based on his

personal observations and believed he had probable cause to do so. The other officers did not arrest the plaintiff and believed that their actions on March 24, 2007 were lawful.  Plaintiff does not allege that Alvarado, Nieves or Venancio assaulted him and/or arrested him.  As such, summary judgment should be granted in their favor as the doctrine of qualified immunity is clearly applicable here.

POINT VII

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS THERE EXISTS NO GENUINE ISSUE OF MATERIAL FACT**

A party seeking summary judgment must "show that there is no genuine as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Cartrett, 477 U.S. 317, 322 (1986); Orson v. Miramax Film Corp., 79 F.3d. 1358, 1366 (3d Cir. 1996); Healey v. New York Life Ins. Co., 860 F. 2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989), Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a fact finder because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented…by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted);

33

see also <u>Anderson,</u> 477 <u>U.S.</u> at 247-48 (stating that "b[y] its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex,</u> 477 <u>U.S.</u> at 324; see also <u>Lujan v. National Wildlife Fed'n,</u> 497 <u>U.S.</u> 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint…with conclusory allegations of an affidavit."); <u>Anderson,</u> 477 <u>U.S.</u> at 249; <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.,</u> 974 <u>F.2d</u> 1358, 1363 (3d Cir. 1992), <u>cert. denied,</u> 570 <u>U.S.</u> 912 (1993)(stating that "[t]o raise a genuine issue of material fact,… the opponent need not match, item for item, piece of evidence proffered by the movant," but must "exceed [] the 'mere scintilla' threshold and… offer [] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exists a genuine issue." L.Civ.R. 56.1. "Where possible single join Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey

Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a join statement is not prepared, then under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted). However, "the parties" statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error" Id. (citation omitted).

In this case, the Defendants have submitted a properly supported statement of material facts. Plaintiff will not be able to raise a genuine issue as to any material fact related to his claims against these Defendants. The Defendants respectfully submit to the Court that they are entitled to judgment as a matter of law.

35

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the defendants' motion for summary judgment should be granted in its entirety.

Respectfully submitted,

ANNA P. PEREIRA
CORPORATION COUNSEL
Attorney for Defendant


BY:   /s/Avion M. Benjamin
      Avion M. Benjamin, Esq.
      Assistant Corporation Counsel


DATE:  May 9, 2011